IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


HOLLY CHEBATORIS,             )
                                            )
            Plaintiff,         )
                                             )
            v.             )        Civil Action No. 09-224
                                             )
MONUMENTAL LIFE INSURANCE    )        Magistrate Judge Lisa Pupo Lenihan
COMPANY and PEOPLES BENEFIT    )
LIFE INSURANCE COMPANY       )
                                           )
            Defendants.     )


## MEMORANDUM OPINION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


For reasons set forth below, the Defendants Motion for Summary Judgment will be
granted as to Plaintiff's claims of bad faith, but denied as to the remainder of her Complaint, *i.e.*,
her claim that Defendants Monumental Life Insurance Company ("Monumental") and/or Peoples
Benefit Life Insurance Company ("Peoples") breached their contractual obligations.

## I.  FACTUAL HISTORY

### A.  Events

This case involves claims related to the November 12, 2005 demise of Plaintiff's mother,
Elizabeth Goller, a resident of Allegheny County, Pennsylvania, who owned a group accidental
death life insurance policy in the amount of $100,000, issued by Peoples and naming her
daughter, Plaintiff Holly Chebatoris, as beneficiary.  Peoples merged with Monumental in late
2007.

Mrs. Goller was a sixty-nine (69) year old, obese, non-insulin-dependent diabetic with an extensive history of heart disease (including congestive heart failure), hypertension, renal insufficiency, and degenerative arthritis, who sometimes used a wheelchair and was oxygen-dependent. On August 19, 2005, she accidentally sustained an approximately 2.5" long laceration to her lower leg while maneuvering her wheelchair into a women's restroom at a Pittsburgh amusement park. The laceration required suturing at a hospital emergency room. From this laceration, she developed a methicillin-resistant staphylococcus aureus("MRSA") infection, which required subsequent hospitalizations and treatment.[1] At the time of her last hospital admission, on November 8, 2005, her treating physician indicated on physical examination that her leg wound was healing well and requested a cardiopulmonary consultation. See Defendants' Statement of Undisputed Material Facts at ¶¶ 76-77. Mrs. Goller died on November 12, 2005. Her death certificate, signed by Dr. Patel (who had been her physician for approximately two years), attributed death to natural causes and identified "acute cardiopulmonary arrest due to or as a consequence of renal failure/sepsis." See Complaint Exhibit D (People's coverage denial letter of November 8, 2007 (summarizing death certificate)); see also Defendants' Statement of Undisputed Material Facts.

---

1. See Complaint Exhibit H (Letter of Dr. Weber explaining that her "wound cultures grew MRSA", Mrs. Goller was admitted to the hospital with extensive cellulitis on September 15, 2005, was transferred to a skilled nursing facility, was readmitted to the hospital on September 21st with more necrotic tissue and treated with vancomycin rifampin, required numerous debridements, and was again admitted to the hospital on October 25 with extensive cellulitis; she developed pneumonia and respiratory failure and died a few weeks later); Defendants' Statement of Undisputed Material Fact at ¶ 66 (stating that Mrs. Goller was admitted to skilled nursing from September 21-29 "to receive continued care of her left leg").

Plaintiff's claims for payment of the life insurance policy proceeds were denied. She requested reconsideration and, by letter of November 18, 2007, Peoples affirmed its denial on two basis: (1) the information did "not indicate that Mrs. Goller's death resulted from accidental injury independent of all other causes" and (2) a policy exclusion for loss caused by sickness or disease applied.

In October, 2008, Plaintiff's counsel provided Defendants with the September 23, 2008 opinion of David Weber, M.D., stating that Mrs. Goller's accidental laceration and infection were the "but for" cause of death. See Complaint Exhibits G-H (Letter of Counsel asserting that "multi-organ system failures were directly attributed to infection as stated on the death certificate as sepsis" and providing Dr. Weber's opinion that: "[I]t is clear that her illness and subsequent death were directly related to her initial injury in August. If she had not had that injury she would not have died.").[2]

---

2. But cf., e.g., Defendants' Statement of Undisputed Material Facts at ¶ 32 (noting hospital record of Mrs. Gollers' MRSA infection in June 2004); ¶¶ 37, 41 (records of cellulitis in August 2004); ¶ 85 (citing record of prior MRS infection of arm laceration treated with IV antibiotic); Plaintiff's Responsive Concise Statement of Material Facts at ¶ 126 (attesting that "Mrs. Goller . . . was last prescribed medication for any staph infections . . . almost a year before her accident at Kennywood"); Defendants' Response to Plaintiff's Statement of Undisputed Material Facts at 4-8 (summarizing evidence of Mrs. Goller's treating cardiologist regarding her significant history of medical problems, including uncontrolled diabetes and heart disease, and her decision to forego, at the end of September 30, 2005, recommended heart catheterization - owing, in part, to her poor health, including recurring infections); Defendants' Statement of Undisputed Material Facts at ¶¶57-59 (summarizing report of infectious disease specialist dated September 16, 2005, evaluating Mrs. Goller as immune compromised with uncontrolled diabetes and a left leg infected ulcer with necrosis and surrounding extensive cellulitis); id. at ¶¶ 60-61 (summarizing report of cardiologist on same date, noting Mrs. Goller's history of coronary artery and rheumatic heart disease); id. at ¶ 64 (noting that operative report of surgical debridement of leg on same date revealed "no compromise of the muscular fascia or tibial involvement").

Monumental informed Plaintiff of its merger with Peoples and reaffirmed denial of the claim by letter of November 12, 2008. See Complaint Exhibit J (Monumental's denial letter asserting that "the manner of death is natural" and that the exclusion applies because "the information does not indicate that [the laceration] resulted in her death. Betty Goller suffered from multiple significant, active, advanced medical diseases which caused and/or materially/substantially contributed to her death. . . . The medical records show the immediate cause of death as acute cardiopulmonary arrest, sepsis and renal failure [as also reflected on] the death certificate.").

Plaintiff's Complaint was filed in the Court of Common Pleas of Allegheny County, Pennsylvania, in February, 2009 and includes counts for breach of contract, breach of a duty of good faith and fair dealing, and violation of 42 Pa.C.S.A. § 8371. It was removed to federal court by Defendants on the basis of diversity.

**B. Policy Language**

The group accidental death life insurance policy at issue (the "Policy") covers an insured current on her premiums until age eighty (80) and expressly provides that benefit proceeds are payable if an insured "dies as a result of an injury" within ninety (90) days "of the accident causing the injury." Policy at p. 2. It also defines "injury" to mean "bodily injury caused by an accident, directly and independently of all other causes" and occurring while the policy is in force. Policy at p. 3. And the policy's exclusions include "death caused by or resulting from . . . sickness or bodily or mental infirmity." Id.; see also Policy at p. 1 ("**THIS COVERAGE IS LIMITED TO ACCIDENTS AND DOES NOT PAY FOR DEATH DUE TO SICKNESS**") (emphasis in original).

## II. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).   All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party.  See Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  Finally, an issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. ANALYSIS

### A. Claims Relating to Breach of Insurance Policy

Defendants' assertions to the contrary notwithstanding, there clearly exist genuine issues of material fact which preclude summary judgment in this case.  Indeed, Defendants appear mistaken in their asserted application of relevant Pennsylvania law to the facts *sub judice*.

Governing Pennsylvania law, as  set forth in the cases cited at length in Defendants' own briefing, explain the two classes of accidental death benefit cases:

First, where a policy contains only a clause restricting coverage and payment of an accidental death benefit to the "**death** of the insured, resulting directly and independently of all other causes through . . . accidental means"(emphasis added), the insured must establish a direct causal relationship between the accident and death.  Johnson v. Kentucky Central Life & Accident Ins. Co., 18 A.2d 507, 511 (Pa. Super. 1941) (cited in Defendants' Memorandum in

Support at 7-8). See also Kelley v. Pittsburgh Casualty Co., 100 A. 494, 495 (Pa. 1917) (explaining that a restrictive clause requiring that accidental injury have been the "direct, independent and exclusive cause of death" requires that it be the "efficient" or "predominate" cause of death (*i.e.*, proximate cause) and, accordingly, where, *e.g.*, the injury "hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident" that criteria is met).

Second, when the policy *also* contains an "additional restrictive clause avoiding payment . . . where '**death** of the insured results directly **or indirectly** from disease or from bodily or mental infirmity'" (emphasis added), then "it is not sufficient . . . to establish a direct causal relation between the accident and the death"; rather, the claimant must show death "was caused solely by external and accidental means, and if the proof points to a pre-existing infirmity or abnormality which may have been a contributing factor, the burden is upon him to produce further evidence to exclude the possibility." Johnson, *supra*. See also Real Estate Trust Co. v. Metropolitan Life Ins. Co., 17 A.2d 416, 420 (Pa. 1941) (explaining that one "suing upon a policy of insurance containing both of the restrictive clauses . . . , had the burden of showing that the loss or death . . . was caused solely by accidental means, and that it was not produced directly or indirectly by disease or infirmity"); Roeper v. Monarch Life Ins. Co., 11 A.2d 184, 186 (Pa. Super. 1940) (judgment for insurer under policy containing both restrictive clauses where injury to foot was exacerbated by diabetes, became gangrenous and required amputation, and arteriosclerosis contributed to subsequent coronary occlusion which ultimately caused death).[3]

_____

3.  See generally Weiner v. Metropolitan Life Ins. Co., 416 F.Supp. 551 (E.D. Pa. 1976) (cited in Defendants' Memorandum in Support at 7-8); Shiffler v. Equitable Life Assr. Soc. of U.S.,

(continued...)

As noted above, Defendants' policy language "pay[s] a benefit if an Insured dies as the result of an Injury" within 90 days of the accident; requires that the bodily **injury** be "caused by an accident, directly and independently of all other causes" and excludes benefits for **death** "caused by or resulting from . . . sickness or bodily or mental infirmity." That is, the restrictive language in the first clause modified injury and not death. In this case, a jury could be convinced that the injury was caused by the accident directly and independently of all other causes. In their interpretation of the language, Defendants appear to have consistently evaluated their payment obligations as though the express requirement of direct and independent causation modified "death".[4] It does not.

As one Court - construing indistinguishable accidental death insurance policy language issued by the same Defendant in a case not cited by either party - has explained:

> The 'direct and independent' language in the policies at issue in [other cases] specifically limits the policy coverage and describes the relationship between the death and accident. Although the drafters of the Policy at issue [in this case] did use the words 'directly and independently of all other causes', those words are used to limit the relationship between the injury - but not the death - and the accident. The court [holds that]: 'the Policy expressly requires that an accident be the sole proximate cause of the insured's bodily injury; however, the Policy

---

3. (...continued)
838 F.2d 78, 84 (3d Cir. 1988) ("[I]f the policy contains an additional clause precluding recovery if the death was caused directly or indirectly by disease, there can be no recovery if pre-existing disease contributed to the death.") (cited in Defendants' Memorandum in Support at 11-12).

4. See, *e.g.*, Defendants' Statement of Undisputed Material Facts at ¶ 121 (noting that claim administrator asked medical consultant, Dr. Connors, if there was "evidence that the death resulted directly from an accidental bodily injury independent of all other causes" or "evidence of an accidental bodily injury severe enough to cause death independent of other causes"); ¶ 122 (citing consultant's conclusion that death "was not reasonably attributed to fatally extensive physical injuries acting alone and independently as the sole cause of death and that significant advanced life-threatening antecedent medical diseases caused and/or materially and substantially contributed to the death").

does not require that the accidental bodily injury be the sole proximate cause of
the insured's death.'

Fowler v. Peoples Benefit Life Insurance Company, 2007 WL 2229053, *6 (N.D. Tex. Aug. 3,

2007).  As the Policy contains no clause restricting benefit coverage to death caused directly and

independently by Mrs. Goller's accidental injury, Plaintiff is not subject to the standards

applicable to such language.

Similarly, the second restrictive clause in the Policy does not contain language excluding

benefits where death  has resulted **directly or indirectly** from disease or from bodily or mental

infirmity.  To the contrary, it excludes coverage only in the narrower category of cases in which

disease or infirmity is a proximate cause.  See Fowler, 2007 WL 2229053 at *5 (explaining well-

recognized distinction between "caused by or resulting from" language which excludes only cases

of proximate cause and "directly or indirectly" language, which excludes broader category of

cases in which illness/infirmity is a contributing, more remote cause); Vickers, 1997 WL 112372,

*8 (noting that exclusionary clause stating that benefits will not be paid if loss is "caused by"

disease or sickness does not "exclude[] coverage where disease or infirmity is an indirect cause of

death").[5]  As the Policy does not exclude benefits in the presence of indirectly contributory

_____

5.  See also Plaintiff's Memorandum in Opposition at 6-7 (distinguishing exclusionary
languauge).  As Plaintiff observes, the Policy language *sub judice* might be characterized as, at
best, ambiguous and, in such event, would be subject to strict construction against the insurer.
See, *e.g.*, Weiner, 416 F.Supp. at 555-56 (noting "well established rule of law that a policy of
insurance is to be construed liberally in favor of the insured and strictly as against the insurer
who chose the language of the contract").  Cf. Compagnie Des Bauxites De Guinee v. Insurance
Co. of North America 554 F.Supp. 1075, 1076 -1077 (W.D. Pa. 1983) ("An exception or
exclusion to a policy of insurance is an affirmative defense, and the burden of proving that the
exclusion is applicable is on the insurer.") (citing Daburlos v. Commercial Insurance Co., 521
F.2d 18, 24 (3d Cir. 1975); Myrtil v. Hartford Fire Insurance Co., 510 F.Supp. 1198 (E.D.
Pa.1981); Weiss v. CNA, 468 F.Supp. 1291 (W.D. Pa.1979); Kravitz v. Equitable Life
(continued...)

disease or infirmity, it does not, under the applicable Pennsylvania case law, require that Plaintiff

demonstrate that her mother's death was caused solely or exclusively by her injury.[6]

In sum, as the actual language of the Policy at issue is not "equivalent to" that of the

Pennsylvania cases discussed in Defendants' briefing,[7] and as the parties' medical experts disagree

as to whether Mrs. Goller's death was caused by her accidental injury or, conversely, by her

antecedent illness/infirmity,[8] summary judgment is inappropriate. It may appear that both injury

and illness contributed to Mrs. Goller's death and the Court need not now determine the precise

level(s) of contribution sufficient to constitute causation under the twin questions of the policy's

coverage and exclusionary provisions. Cf. Fowler, 2007 WL 2229053, *6 (concluding, in claim

---

5. (...continued)
 Assurance Society of United States, 453 F.Supp. 381 (E.D. Pa.1978)).

6. Compare Defendants' Statement of Undisputed Material Facts at ¶¶ 162, 168 (suggesting that death must be attributable to her injury "alone and independently as the sole cause"); Defendants' Memorandum in Support at 12 (asserting that policy language requires Plaintiff to establish that "death was caused solely by external and accidental means" and to "produce sufficient evidence so as to exclude the possibility that any disease or sickness or other bodily infirmity may have been a contributing factor to decedent's death").

7. Compare Defendants' Memorandum in Support at 6.

8. Compare, e.g., Defendants' Statement of Undisputed Material Facts at ¶¶ 89-93 (summarizing Statement of Attending Physician completed by Dr. Patel in December, 2005, in which he indicates that primary cause of death was accidental and due to sepsis, acute renal failure, acute tubular necrosis, multi-organ failure, and leg wounds; while contributory causes of death were coronary artery disease, aortic stenosis, COPD and aortic valve replacement); Plaintiff's Memorandum in Opposition at 10-12 (noting Dr. Patel's deposition testimony that "ultimately [Mrs. Goller's] death resulted from the leg injury" and sepsis/renal failure) with supra n. 2 (citing Defendants' evidence suggesting that infected tissue/staph infection was contained/controlled, that laceration injury was healing well, and that final hospitalization and death were attributable to pre-existing medical conditions, e.g., coronary and renal disease and immunocompromise, progression of which was unrelated to accidental leg injury and resulting staph infection); Defendants' Statement of Undisputed Material Facts at ¶¶ 160-161 (noting disagreement of Defendants' consultant, Dr. Connors, with conclusion that wound infection caused sepsis syndrome leading to multi-organ failure and death).

under Peoples Benefit Life Insurance Company accidental death insurance policy, that coverage language required that injury "must only be the proximate [but not the sole] cause of death" and that exclusionary language applied "only where an insured's preexisting conditions are a proximate cause of her death"); id. at *7 (denying summary judgment to defendant where expert medical testimony differed regarding proximate cause but agreed that both accidental injury and preexisting illnesses (including obesity, diabetes, hypertension, and cardiovascular disease) contributed to death of insured who fractured ribs in fall, developed pneumonia and died within approximately three weeks); id. (finding material fact questions as to whether preexisting diseases were a proximate or remote cause of death).[9]

### B. __Claims Relating to Bad Faith Conduct__

Plaintiff includes claims for Defendants' breach of a common law duty of good faith and fair dealing as well as a violation under Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371.

First, Plaintiff's claim for breach of the implied duty of good faith (Count II) is subsumed into its breach of contract claim. See, *e.g.*, Schmitt v. State Farm Ins. Co., 2010 WL 1904037, *3 (W.D. Pa., April 16, 2010) ("With regard to an insurance contract, the implied covenant of good faith and fair dealing acts as a term of the contract, and arises from the contract itself. . . . There is no independent cause of action for breach of the implied covenant of good faith and fair dealing because that breach is simply a breach of contract.") (citing Zaloga v. Provident Life and Acc.

---

9. Cf. also Vickers, 1997 WL 112372 at **5-6 (discussing "expectations of a reasonable policyholder").

Inc. Co. of America, 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009)); Fingles v. Continental Cas. Co.,

2010 WL 1718289, *3 (E.D. Pa., April 28, 2010) (same).[10]

Second, a statutory cause of action for bad faith under § 8371 (Count III) arises only

where the plaintiff shows that the insurer did not have a reasonable basis for its action and acted

knowingly or recklessly nonetheless. See, e.g. Northwestern Mutual Life. Ins. Co. v. Babayan,

430 F.3d 121 (3d Cir. 2005); Leach v. Northwestern Mut. Ins. Co., 2008 WL 227687 (3d Cir. Jan.

29, 2008). Cf. Quaciari v. Allstate Ins.Co., 998 F.Supp. 578, 581 n. 3 (E.D. Pa. 1998), aff'd, 172

F.3d 860 (3d Cir. 1998) (noting that defendant may prevail at summary judgment by

"affirmatively demonstrating a reasonable basis for its actions"). If the insurer has a reasonable

basis for denying or delaying payment of a claim, even if the basis is ultimately determined to be

erroneous, it is not liable for a breach of the duty of good faith.  While Defendants' interpretation

of the effect of the policy language under the  applicable law was misguided, it was not so facially

unreasonable as to support an award of damages for bad faith.  Nor was Defendants' evaluation of

this claim through their claims adjusters and medical expert, Dr. Connors, unreasonable under

their interpretation. See generally Defendants' Memorandum in support at 18-26.  Compare

Plaintiff's Responsive Concise Statement of Material Facts at ¶ 159-168.[11]  Accordingly, because

the record reflects a not unreasonable basis for evaluation and denial, Defendants are entitled to

---

10.  This duty requires that the insurer's evaluation of the claim must be honest, intelligent and objective.  See United States Fire Insur. Co. v. Royal Insur. Co., 759 F.2d 306, 311 (3d Cir. 1985) (citing Shearer v. Reed, 428 A.2d 635, 638 (Pa. Super. 1981)).

11.  See also Plaintiff's Memorandum in Opposition at 25-27.  Although the Court recognizes merit in many of Plaintiff's observations regarding Dr. Connor's relevant qualifications/expertise and affiliations, such factors do not rise to the level of unreasonableness or bad faith under § 8371 and applicable case law.

summary judgment as to Plaintiff's statutory claim of bad faith.

**IV.  <u>CONCLUSION</u>**

For the reasons set forth herein, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's claims of bad faith, but denied it as to the remainder of her Complaint (Count I, Breach of Contract). An Order will follow.

_____
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: August 23, 2010